IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARES, INC., aka CONSUMER
ADVOCATES RIGHTS ENFORCEMENT, et al.,

       Plaintiffs,                                CIV. NO. S-05-2553 FCD GGH

    vs.

MICHAEL O. LEAVITT,

       Defendant.                                <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

        This case has been referred to the undersigned pursuant to E. D. Local Rule 72-302(a).  Previously pending on this court's law and motion calendar for April 26, 2007, was defendant's motion to dismiss, filed December 28, 2006.  Martha Bronson appeared for plaintiffs.  Bobbie Montoya and Robert Jackson represented defendant.  After reviewing the papers and hearing oral argument, the court now issues the following findings and recommendations.

<u>BACKGROUND</u>

        This is a proposed class action lawsuit wherein plaintiff Wall[1] represents those individuals who have had problems obtaining return of their third party personal injury settlement proceeds which they claim are being unlawfully retained and used by defendants.  She

---

[1] Hereafter, all references to plaintiff pertain to Pamela Wall.

1

and CARES, Inc., a nonprofit advocacy organization, seek to enjoin the Secretary from certain practices in regard to the Medicare program.

The allegations of the complaint specific to Wall relate that Wall was a Medicare beneficiary and was injured in a car accident. Pursuant to the Medicare Secondary Payor provisions (MSP), Medicare made accident related conditional medical payments to her as a result on about December, 2004. Medicare's contractor, United Government Services, Inc. ("UGS") then informed her that due to the payments made, it had a claim of $4,199.33 against any proceeds she received from a third party liability award. When plaintiff received her award, her attorney forwarded a check for $15,000 to UGS on April 21, 2005, as demanded by UGS and also renewed a prior request for reconsideration of the amount claimed by Medicare. UGS sent a refund check of $10,674.69 on May 3, 2005. UGS then amended the recovery claim, and revised the total amount owed Medicare to $1,574.63. The refund check of $1,829.68 was mailed to plaintiff's attorney on July 14, 2005. Plaintiff's attorney calculated an additional amount owed plaintiff of $941.61 which was eventually mailed by UGS to plaintiff. (Exh. to Opp'n.)

Plaintiff argues that Medicare took her entire $15,000 settlement knowing that only a few hundred dollars of that amount was possibly recoverable under MSP. Plaintiff generally contends that Medicare customarily violates due process rights of disabled persons by: "requiring and/or allowing a fiscal intermediary, United Government Services, Inc. (UGS), to (1) receive, retain and deprive plaintiffs of the use and enjoyment of their third party personal injury money, indefinitely, where there is no basis to conclude that the proceeds relate to medicals under the Medicare Secondary Payor statute; (2) by delaying, indefinitely, the return of plaintiff's money that has been determined due to them; (3) by failing to provide written initial determinations [with respect to what is owed under the Medicare Secondary Payor statute]; (4) failing to provide timely initial determinations [with respect to what is owed under the Medicare Secondary Payor statute]; (5) failing to provide accurate information on appeal procedures and reconsiderations [with respect to what is owed under the Medicare Secondary Payor statute]; (6)

by taking possession of and retaining third party settlement proceeds under the guise of MSP reimbursement without reasonable belief that the money is subject to an MSP claim." Complaint at 1-2. Plaintiff seeks declaratory and injunctive relief with respect to, and to correct, the above violations. Plaintiff does *not* seek any benefits or compensatory damages for herself or the class.

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction due to failure to exhaust administrative remedies under the Medicare Act as required by 42 U.S.C. 405(g).[2] Plaintiff contends that exhaustion is not appropriate in this case because this is not a claim for benefits, but rather for the illegal systematic taking of her third party settlement proceeds without due process.

LEGAL STANDARDS

Lack of subject matter jurisdiction may be raised at any time by either party or by the court. See Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996). On a Rule 12(b)(1) motion to dismiss, plaintiff bears the burden of proving that jurisdiction exists. See, e.g., Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir.1979). In reviewing a motion pursuant to this rule, the court may consider affidavits or any other evidence properly before the court. Sommatino v. United States, 255 F.3d 704, 710 (9th Cir. 2001); Am. Med. Colleges v. United States, 217 F.3d 770, 778 (9th Cir. 2000).

All legal challenges implicating the Medicare statutory scheme under 42 U.S.C. § 405(g)(h), a provision of the Social Security Act, which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii, must be channeled, at least initially, through the Medicare administering

---

[2] Section 405(g) provides in pertinent part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

3

1  agency, and a "final [administrative] decision" obtained . <u>Shalala v. Illinois Council on Long
2  Term Care, Inc.</u>, 529 U.S. 1, 120 S. Ct. 1084 (2000).

3  "A final judgment [under 42 U.S.C. § 405(g)] consists of two elements:  the
4  presentment of a claim to the [Secretary] and the exhaustion of administrative remedies. The
5  presentment requirement is jurisdictional, and therefore cannot be waived by the [Secretary] or
6  the courts.  The exhaustion requirement . . .is not jurisdictional, and thus, is waivable by either
7  the [Secretary] or the courts.  <u>Matthews v. Eldridge</u>, 424 U.S. 319, 330, 96 S. Ct. 893, 900
8  (1975)." <u>Johnson v. Shalala</u>, 2 F.3d 918, 921 (9th Cir. 1993).  <u>See</u> also <u>Kaiser v. Blue Cross of
9  California</u>, 347 F.3d 1107, 1115 (9th Cir. 2003).

10  A judicial waiver of exhaustion is permitted under exceptional circumstances.
11  <u>Bowen v. City of New York</u>, 476 U.S. 467, 483, 106 S. Ct. 2022, 2031 (1986). Whether judicial
12  waiver permits plaintiff to proceed with her claims under 42 U.S.C. § 405(g) is dependent on
13  three factors.  "The claim must be (1) collateral to a substantive claim of entitlement
14  (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm
15  (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion
16  (futility)."  <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1082 (9th Cir. 2003), quoting <u>Johnson v. Shalala</u>, 2
17  F.3d at 921.  All three factors must be shown.  <u>See</u> <u>Kaiser v. Blue Cross of California</u>, 347 F.3d
18  at 1115.

19  ANALYSIS

20  A.  <u>Presentment</u>

21  The presentment requirement should be construed liberally, although it requires
22  more than reliance on an initial application for benefits.  <u>Situ v. Leavitt</u>, 240 F.R.D. 551, 555,
23  557 (N.D. Cal. 2007) (permitting satisfaction of presentment requirement by making a complaint
24  through phone call or contact with agency).  In this case, the complaint will be accepted as true in
25  its allegation that plaintiff followed "UGS's instruction to file a request for hearing with the
26  social security department .. but the department failed to respond ...." Compl. at ¶5.  Plaintiff has

therefore satisfied the jurisdictional presentment requirement.

    B. Exhaustion

      1. Collaterality

   Plaintiff correctly argues that the complaint does not involve a claim for benefits but rather is limited to alleged taking of property without due process.

   In Kildare, the court found the claims to be based on individualized irregularities rather than a specific policy, order or directive, which was distinctly lacking in that case. 325 F.3d at 1083. Kildare alleged that state officials were systematically disregarding federal regulations in their initial review of applications for Social Security Disability Insurance and Supplemental Security Income, and that the Social Security Administration was not adequately overseeing the state officials. Specific claims were numerous, but by way of example, alleged that state officials did not adequately develop claimant's medical history, and did not give proper weight to certain medical reports. The Ninth Circuit found these types of allegations to be a series of irregularities in individual cases, and that plaintiffs could not point to any specific policy requiring the state officials to disregard the regulations. Id. at 1083.

   Kildare distinguished City of New York, where the Supreme Court found the challenge of a secret policy creating a mandatory presumption that mentally disabled who did not meet the listings could nevertheless do unskilled work, to be collateral to any claim for benefits as benefits were not sought or awarded in the district court, and Johnson, wherein the Ninth Circuit ruled that a policy of treating in-kind loans as income was at issue, rather than a claim of entitlement.

   Johnson fits this case, whereas Kildare does not. In the opinion of the undersigned, a fatal and unaddressed defect runs throughout the Secretary's lack of collaterality contentions. Not in dispute in any way is the fact that the Secretary, through its contractor, takes monies from benefit recipients which in no way, shape or form are related to "benefits" or entitlement to benefits. Even assuming that monies which should be earmarked to repay benefits

5

are "benefits" themselves, no one could reasonably argue that the excess of the repayment owed, here initially over $10,000, and later nearly the entire $15,000 taken by UGS, had anything whatsoever to do with benefits. The lynchpin of plaintiff's entire case revolves about the fact that the Secretary is taking substantial monies, if even for a short period, over which the Secretary has no valid interest. These disassociated monies are the antithesis of "benefits" under the Medicare/Social Security Acts. Thus, all of plaintiff's claims herein, to the extent that they involve the taking of monies to which not even the Secretary contends he is ultimately entitled, are collateral to any benefits given, or to be given, under the Acts.[3]

And, the initial, perhaps unwarranted, taking of unrelated-to-benefits monies colors each and every other claim made by plaintiff herein. For example, if plaintiff complains that the refund of unrelated monies took too long, the point here is that this assertion too is unrelated to benefits. All of plaintiff's claims involve in the main allegations regarding the unwarranted taking of monies. The fact that some of the monies, in this case less than 10%, had a relation to past benefits paid, cannot undo the unrelatedness of the non-benefits takings. All of plaintiff's claims involve claims collateral to benefits paid or owing. This case stands in stark contrast to the situation in Heckler v. Ringer, 466 U.S. 611, 104 S. Ct. 2013 in which an attack on the Secretary's procedures was found "at bottom, a claim that [plaintiffs] should be paid for their BCBR surgery." Id. at 614, 104 S. Ct. 2021.

Moreover, even assuming the sophistry that monies unrelated to "benefits" are nevertheless benefits, almost all of plaintiff's allegations concern the process by which monies were distributed or not distributed to her, rather than eligibility or entitlement to the benefits. For example, in her supplemental brief, plaintiff points to section 50.8.3(B) which she claims contradicts defendant's website which states that it is the beneficiary's responsibility to submit documentation supporting his or her belief that certain claims should be removed from the

---

[3] While the case might be different if UGS had initially only demanded what it thought was owed to the Secretary, that case does not fit the situation here.

conditional payment amount as not related to the original claim.  Pl.'s Post Hr'g. Br. at 5; Compl. ¶ 39.  In contrast, the MSP statute places the burden on defendant.  This is a process only issue.  Although at this stage of the case, defendant correctly points out that plaintiff has only presented allegations "based on information and belief"; if true, these allegations would amount to policy rather than idiosyncratic individual errors.  See Kildare, 325 F.3d at 1083.[4]

### 2. Irreparability

Plaintiff has met this requirement by virtue of her financial hardship as a disabled medicare beneficiary who allegedly did not receive her third party settlement proceeds for an extended time, and did not receive $951.61 of the proceeds until a year after they were due her.  Such damage is not recompensable through retroactive payments as the denial of use of plaintiff's monies, if even for a short time, is irreparable.  See Johnson, 2 F.3d at 922, quoting Matthews v. Eldridge, 424 U.S. 319, 331, 96 S. Ct. 893, 901 (1975) (finding dependency on disability benefits is economic loss qualifying as irreparable harm); Briggs v. Sullivan, 886 F.2d 1132, 1140 (9th Cir. 1989) (citation and internal quotations omitted) ("a colorable showing of irreparable injury for purposes of waiver of the exhaustion requirement is one that is not wholly insubstantial, immaterial, or frivolous").

### 3. Futility

Finally, because plaintiff's constitutional claim challenges fundamental agency policies and practices that broadly impact similarly situated medicare beneficiaries, administrative exhaustion would be futile.  The policies underlying the exhaustion requirement – deference to agency expertise, development of a detailed factual record, and conservation of judicial resources – are not furthered by foregoing immediate judicial consideration of this issue.  Cf., Johnson, 2 F.3d at 922 (futile to require administrative exhaustion by class members

---

[4] On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff's allegations will be accepted as true, when the Commissioner proffers no facts to the contrary.  See Greene v. United States, 207 F. Supp. 2d 1113 (E.D. Cal. 2002).

challenging SSA policy of designating in-kind loans as income under the SSI program); Briggs, 886 F.2d at 1140 (futile to require administrative exhaustion of appellants' "straightforward statutory and constitutional challenge" to SSA policy of suspending benefits while awaiting designation of new representative-payees); City of New York, 476 U.S. at 485, 106 S. Ct. at 2032-33 (exhaustion futile where systemwide policy inconsistent with established regulations such as to constitute potential violation of Social Security Act, and permitting compilation of detailed factual record or agency expertise would not aid in resolution of straightforward statutory challenge to it). Furthermore, some of the policies being challenged are the very administrative review and appeal procedures which defendant asserts should be exhausted. See Erringer, 189 F. Supp. 2d at 994.

The court finds, therefore, that plaintiff has met all criteria for waiving the requirement that she exhaust administrative remedies and obtain a final administrative decision, thus permitting this court's review of plaintiff's constitutional claims under 42 U.S.C. § 405(g). Her claims herein are separate from her entitlement to benefits.[5]

CONCLUSION

Accordingly, IT IS RECOMMENDED that defendant's motion to dismiss, filed December 28, 2006, be denied. These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any

---

[5] The court will address here defendant's claim that the amount in controversy is not at least $1,000 and thus administrative review is required. See 42 U.S.C. § 1395ff(b) (amount in controversy must be $1,000 or more for judicial review). "[T]he purpose of the amount in controversy provision, which is parallel to that of the exhaustion provision, would not be furthered by its application to constitutional challenges to the Act. These claims are not the 'trivial' or 'minor matters' from which Congress sought to protect the courts." Bartlett v. Bowen, 816 F.2d 695, 701 (D.C. Cir. 1987). *But Cf.* Schwartz v. Medicare, 832 F. Supp. 782, 790 (D. N. J. 1993) (dismissing under the Medicare Act because amount in controversy less than $1,000 as separate ground from exhaustion). In any event, plaintiff's claim that nearly the entire fifteen thousand dollars was improperly taken is far in excess of $1,000. The fact that the proper amounts were eventually returned does not moot the challenge to the take-first, return-later procedures.

1 party may file written objections with the court and serve a copy on all parties. Such a document
2 should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any
3 reply to the objections shall be served and filed within ten (10) days after service of the
4 objections. The parties are advised that failure to file objections within the specified time may
5 waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.
6 1991).

7 DATED: 7/11/07              /s/ Gregory G. Hollows

8                              GREGORY G. HOLLOWS
                               U. S. MAGISTRATE JUDGE
9 GGH:076:Cares2553.mtd.wpd